**In re PE CORPORATION SECURITIES LITIGATION.**

**No. 3:00cv705(CFD)(TPS).**

United States District Court, D. Connecticut.

Nov. 3, 2003.

Celera common stock conducted by PE Corporation ("PE") on or about February 29, 2000 (the "secondary offering"), commenced this securities class action against the defendants, PE and certain officers and directors, alleging that they violated sections 11, 12(a)(2), and 15 of the Securities Act of 1933. Pending before the court is the Defendants' Motion for a Protective Order. (Doc. # 60). In virtually all respects, except as noted hereafter, the defendants' motion is **DENIED**.

## I. Facts

Celera, a subsidiary of PE, began sequencing the human genome in 1999. (Am. Compl.¶ 7, 17). Its strategy was to sequence the genome and then "use the genomic information derived from its genomic sequencing program as a platform upon which to develop an integrated information and discovery system." (*Id.* ¶ 20). To effectuate this strategy, Celera required exclusive patent protection for a period of five years. (*See id.* ¶ 25). By January of 2000, it announced that it had sequenced 90% of the genome. (*Id.* ¶ 17).

At the same time, other companies were pursuing the same ends; most significantly, the Human Genome Project (the "HGP"), "a worldwide coordinated effort ... sponsored by governments and nonprofit organizations in the United States, England, Japan, and France, among other nations." (*Id.* ¶ 18). The HGP intended to make its findings publicly available. As such, a "race" to map the human genome ensued. (*Id.* ¶ 19). Because Celera's competitive position was dependant upon its ability to obtain patent protection, it entered into discussions with the HGP regarding a possible collaboration on the project. (*Id.* ¶ 21, 24). However, such coaction never materialized. (*Id.*). The plaintiffs argue that because the governments that supported the HGP opposed broad patent protection, such as Celera required, Celera's "ability to obtain protection from the immediate release of the human genome code, in the face of such opposition, was very attenuated and subject to increased and substantial risk." (*Id.* ¶ 26).

On or about February 29, 2000, PE filed with the SEC for a secondary offering. (*Id.*

Brian C. Fournier, David A. Slossberg, J. Daniel Sagarin, Hurwitz & Sagarin, Milford, CT, Carlos F. Ramirez, Sanford P. Dumain, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, for Plaintiff.

Margaret E. Haering, Hurwitz & Sagarin, Milford, CT, Marvin L. Frank, Rabin, Murray & Frank, New York City, Jeffrey S. Nobel, Schatz & Nobel, Hartford, CT, for Consol. Plaintiff.

Kevin D. Lewis, Michael J. Chepiga, William M. Regan, Robert A. Bourque, Simpson, Thacher & Bartlett, New York City, Michael P. Shea, Day, Berry & Howard, Hartford, CT, Stanley A. Twardy, Jr., Terence J. Gallagher, III, Thomas D. Goldberg, Day, Berry & Howard, Stamford, CT, for Defendant.

### RULING ON DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

SMITH, United States Magistrate Judge.

The lead plaintiffs, David Berlin and Vinh Voung, on behalf of a class consisting of all persons other than defendants who purchased the common stock of PE Corporation Celera Genomics Group ("Celera" or the "Company") in a secondary public offering of

¶ 32). The prospectus became effective and PE sold over 4 million shares for gross proceeds of approximately $944 million. (Id. ¶ 34). While most of the common stock was purchased for $225.00 per share, it has since significantly decreased in value, now selling for approximately eleven dollars. (Id.).

Generally, the plaintiffs argue that the registration statement and prospectus issued in connection with the secondary offering was materially false and misleading. (Id. ¶¶ 32–48). They point to several sections of the prospectus that they contend were false and misleading in light of the fact that Celera would unlikely be able to obtain the requisite patent protection due, in large part, to their competition with and inability to collaborate with HGP. As such, the plaintiffs claim that the defendants violated sections 11, 12(a)(2), and 15 of the Securities Act of 1933. (Id. ¶¶ 50–72).

On July 15, 2003, the plaintiffs served the defendants with document requests. In the present motion, the defendants object to thirteen of the twenty-seven individual requests served. (Ds.' Mem. Supp. Mot., 8/5/03, at 10–15). They object to eight on the basis that they seek materials that relate generically in any way to the secondary offering and are therefore irrelevant and unduly burdensome. (Id. at 11–13) (the "Secondary Offering Group"). These include:

Request No. 3: All documents concerning the minutes of regular and special meetings of the Board of Directors of Celera, or any committee thereof or any committee or group which reported to the Board of Directors, concerning the Secondary Offering, including any documents which were the source of any information in any minutes or drafts thereof.

Request No. 4: All documents concerning information distributed at any meeting of the Board of Directors of Celera, or any committee thereof, or the members of the Board of Directors in advance of, or subsequent to, any meeting of the Board of Directors or committee thereof, concerning the Secondary Offering.

Request No. 18: All documents concerning the writing of the prospectus or registration statement for the Secondary Offering.

Request No. 19: All documents concerning information contained in the prospectus and the registration [statement], including without limitation, Celera's belief that it was not competing with the HGP to sequence the human genome.

Request No. 20: All documents concerning communications and information exchanged between Celera and any securities or investment analysts with regards to the Secondary Offering.

Request No. 21: All documents concerning communications between Celera and Bear Ste[a]rns, Goldman Sachs, ING, Morgan Stanley, R & G, Cowen, and Simpson Thacher during the Secondary Offering.

Request No. 22: All documents concerning information furnished, transmitted, sent or written by or to, or generated, authored, received or reviewed by Bear Ste[a]rns, Goldman Sachs, ING, Morgan Stanley, R & G and Simpson Thacher concerning the Secondary Offering.

Request No. 23: All documents concerning due diligence reviews conducted by Bear Ste[a]rns, Goldman Sachs, ING, Morgan Stanley, R & G and Simpson Thacher concerning the Secondary Offering.

In addition, they object to three on the basis that they seek materials that relate generically in any way to Celera's business and are therefore irrelevant and unduly burdensome. (Id. at 13–14)(the "Business Group"). These include:

Request No. 7: All documents concerning Celera's business plan and strategies concerning sequencing the human genome, including without limitation, its ability to receive protection for and/or market, sell or license information derived from its sequencing of the human genome map.

Request No. 8: Analyses, studies, evaluations, memoranda or reports concerning Celera's efforts to sequence the human genome and use the information derived from such sequencing to carry out its business plans and strategies.

Request No. 15: Analyses, studies, evaluations, memoranda or reports concerning the effect that the HGP's efforts to se-

quence the human genome would have on Celera's business plans and strategies.

Finally, they object to two on the basis that they are overbroad and seek information that is not relevant to any claims or defenses in this case. (*Id.* at 14–15) (the "Patent/Investigation Group"). These include:

Request No. 16: All documents concerning any communications between Celera and the U.S. Patent and Trademark Office concerning Celera seeking or obtaining patent or copyright protection for information derived from sequencing the human genome.

Request No. 24: All documents concerning any actual or contemplated inquiry, investigation or proceeding with respect to Celera or any of its officers or directors by any federal, state or local governmental, administrative, regulatory, prosecutorial, police or judicial entity or official, concerning the complaints' allegations, including the SEC and the United States Department of Justice.

Based on these objections, the defendants ask this court to issue a protective order, in accordance with Rule 26(c) of the Federal Rules of Civil Procedure, limiting the scope of discovery accordingly.

## II. Discussion

The general purpose of discovery is "to inform the adversary of what theories an[sic] party proposes to 'develop' at trial, and on what basis a jury will be asked to award damages." *New Haven Temple SDA Church v. Consol. Edison Corp.*, No. 94 Civ. 7128, 1995 WL 358788, at *5, 1995 U.S. Dist. LEXIS 8220, at *16–17 (S.D.N.Y. June 13, 1995). The discovery rules, "together with pretrial procedures[,] make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent" by requiring disclosure of *all* relevant information. *United States v. The Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)(citing *Hickman v. Taylor*, 329 U.S. 495, 500–1, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).

### A.

Rule 26(b)(1) of the Federal Rules of Civil Procedure states, in pertinent part, that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party ...." Fed.R.Civ.P. 26(b)(1). Courts have broad discretion in determining that which is relevant to the claim or defense of any party. *Herbert v. Lando,* 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). However, that discretion is not unfettered; where a court "denies discovery of facts necessary to a fair presentation of the case," it has abused that discretion. 6 James Wm. Moore, *Moore's Federal Practice* § 26.41[7][b] (3d ed.2002).

Moreover, relevance, in discovery matters, is broadly and liberally construed. *Herbert,* 441 U.S. at 177, 99 S.Ct. 1635 ("the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials"); *Cox v. McClellan,* 174 F.R.D. 32, 34 (W.D.N.Y.1997). "Relevant evidence", as that term is defined in the Federal Rules of Evidence, means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401. In discovery, relevance is even broader: information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery. *See Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir. 1991); *Morse/Diesel, Inc. v. Fid. & Deposit Co.,* 122 F.R.D. 447, 449 (S.D.N.Y.1988). Additionally, "whether a specific discovery request seeks information relevant to a claim or defense will turn on the specific circumstances of the pending action...." 6 James Wm. Moore, et al., *Moore's Federal Practice* § 26.41[6][c] (3d ed.2002)(citing Fed.R. Civ. P. 26(b)(1) advisory committee's note (2000)).

That said, discovery requests that are "based on pure speculation and conjecture" are not permissible. *Surles v. Air France,* No. 00 Civ. 5004, 2001 WL 815522, at *4, 2001 U.S. Dist. LEXIS 10048, at *11 (S.D.N.Y. July 9, 2001) (citations omitted). Moreover, discovery may not be used as a "fishing expedition to discover additional instances of wrongdoing beyond those already alleged." *Tottenham v. Trans World Gam-*

*ing Corp.,* No. 00 Civ. 7697, 2002 WL 1967023, at \*2, 2002 U.S. Dist. LEXIS 11313, at \*3 (S.D.N.Y. June 21, 2002) (citations omitted).

The defendants argue that the document requests to which they object are not relevant to a claim or defense of any party. They base this position, in large part, on the premise that the 2000 Amendment to Rule 26(b)(1) "narrowed the scope of permissible discovery." (Ds.' Mem. Supp. Mot., 8/5/03, at 8) (citing *RLS Assocs., LLC v. United Bank of Kuwait, PLC,* No. 01 Civ. 1290, 2003 WL 1563330, at \*7, 2003 U.S. Dist. LEXIS 4539, at \*20 (S.D.N.Y. Mar. 26, 2003)(although document requests related to "subject matter" of the action, they were not relevant to the parties' specific claims and defenses)). While that may be true, the distinction between information relevant to the claims and defenses and information relevant to the subject matter of the action "cannot be defined with precision." Fed.R.Civ.P. 26(b)(1) advisory committee's note (2000). All that the 2000 Amendment implies is that "the fact must be germane to a claim or defense alleged in the pleading for information concerning it to be a proper subject of discovery." 6 James Wm. Moore, et al., *Moore's Federal Practice* § 26.41[6][c] (3d ed.2002).

■ The defendants contend that the Secondary Offering Group requests are irrelevant to the claims and defenses in this case "because they seek any information that generically relates to Celera's Secondary Offering." (Ds.' Mem. Supp. Mot., 8/5/03, at 11). The defendants are correct in stating that Rule 26(b) "requires that Plaintiff's discovery efforts be limited to their claim," however, they read the complaint too narrowly in suggesting that the plaintiffs' claim is "that the United States Government was going to retaliate against Celera because Celera did not agree to collaborate with the HGP." (*Id.*). The court declines to view the plaintiffs' claim in such narrow and specific terms.

The plaintiffs assert three claims in their complaint. First, they contend that the defendants violated section 11 of the Securities Act of 1933 because the registration statement for the secondary offering "was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed adequately to disclose material facts...." (Am.Compl.¶ 52). Second, they maintain that the defendants violated section 12(a)(2) of the Securities Act of 1933 because the prospectus relating to the secondary offering "contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts." (*Id.*). Finally, the plaintiffs allege that the individual defendants violated section 15 of the Securities Act of 1933 because each was "a control person of Celera by virtue of their position as directors and/or senior officers of Celera." (*Id.*).

As aforementioned, parties may obtain discovery regarding any matter which is relevant to a claim or defense of any party. The plaintiffs' claims are based on the assertion that the defendants included materially false and misleading statements in Celera's registration statement and prospectus. That assertion, in turn, is based, in large part, on Celera's relationship with the HGP, which was a potential hindrance to its obtaining the necessary patent protection. This court would abuse its discretion if it limited the scope of discovery to an assertion twice removed from the plaintiffs' general claims. As such, it refuses to deny the plaintiffs access to facts that are essential to a fair presentation of the case.

As a practical matter, the plaintiffs would be hard-pressed to prepare their case if discovery were limited as the defendants suggest. A determination of whether a fact renders a statement false and misleading necessarily requires inquiry into *both* the fact and the statement. Perhaps, despite the fact, the statement is accurate. Or, perhaps the statement is false and misleading because of any number of facts, the fact in question being one. It is the interplay between a fact and a statement that renders the statement false and misleading. Each is indispensable to such a determination.

In addition, the defendants argue that the Secondary Offering Group requests are

merely a fishing expedition for additional instances of wrongdoing relating to the secondary offering. (Ds.' Mem. Supp. Mot., 8/5/03, at 11 (citing *Tottenham*, 2002 WL 1967023 at *2, 2002 U.S. Dist. LEXIS 11313 at *3)). The court does not agree.

*Tottenham* involved counterclaims by an employer for unjust enrichment, conversion, and breach of fiduciary duties as a result of its employee's use of company funds to purchase one share of stock in another company for his personal benefit and to pay his wife's automobile insurance. *Id.*, 2002 WL 1967023, at *1, 2002 U.S. Dist. LEXIS 11313 at *1–2. The present case, on the other hand, involves claims that the defendants violated sections 11, 12(a)(2), and 15 of the Securities Act of 1933 as a result of materially false and misleading statements. A claim that Celera misrepresented its "business strategy", for instance, is a much broader assertion than a claim that involves a discrete and discernible physical act, such as stealing company funds. As such, the nature of the present case necessarily calls for a broader scope of discovery.

Moreover, in *Tottenham*, the employer sought to obtain, through discovery, documents relating to *all* of the defendant's or his wife's expenses, obligations, and finances on the theory that if the plaintiff "used company money to pay for his personal insurance needs, he may well have used company money to pay other personal expenses." *Id.*, 2002 WL 1967023, at *1, 2002 U.S. Dist. LEXIS 11313 at *2–3. No such speculation and conjecture is present in this case. In *Tottenham*, the employer could offer no objective support for the contention upon which the request is premised. *Id.*, 2002 WL 1967023, at *2, 2002 U.S. Dist. LEXIS 11313 at *4–5. Here, on the other hand, the plaintiffs point to several instances in which they believe the prospectus was materially false and misleading. As objective support for their claim, they direct the court's attention to the facts and circumstances surrounding Celera's relationship with the HGP and their omission in the prospectus. Discovery "is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." *Id.* (citation

omitted). The plaintiffs have satisfied this burden. For the foregoing reasons, the court finds that the Secondary Offering Group requests are relevant to the plaintiff's claims.

The defendants also contend that the Business Group requests are not relevant because they seek materials that relate generically in any way to Celera's business. (Ds.' Mem. Supp. Mot., 8/5/03, at 13). Their argument is the same as that made against the Secondary Offering Group requests; that the requests "be limited to Plaintiffs' claim that the United States Government was going to retaliate against Celera because Celera did not agree to collaborate with the HGP." (*Id.*). It fails for the same reasons. The complaint alleges that the descriptions of Celera's business plan and strategies contained in the prospectus were false and misleading. Each request pertains to Celera's "business plan and strategies." Therefore, the information sought is relevant and the requests are proper.

The defendants further contend that the Patent/Investigation Group requests are not relevant to the claims and defenses in this case. They argue that the requests are overbroad. Again, the court disagrees. The complaint alleges, in part, that Celera's inability to obtain the requisite patent protection rendered certain statements in the registration statement and prospectus false and misleading. Clearly, *communications between Celera and the U.S. Patent and Trademark Office concerning Celera's seeking or obtaining patent or copyright protection for information derived from sequencing the human genome are reasonably calculated to lead to the discovery of admissible evidence.* Moreover, Request No. 24 is expressly limited to documents "concerning the complaints' allegations." As such, the Patent/Investigation Group requests are relevant to the claims and defenses in the case.

The document requests are not fishing expeditions nor based on mere speculation and conjecture. The nature of the action necessitates a broad scope of discovery. At the very least, the information sought by these requests is reasonably calculated to lead to the discovery of admissible evidence. As such, they are relevant to the claims and

**26**

defenses in this case. To deny discovery, then, on these requests would abuse this court's broad discretion.

Having thus determined that the objected—to document requests are relevant to the claims and defenses of any party, the court now turns its attention to whether a protective order would be appropriate.

**B.**

■ Because the liberality of pretrial discovery has the potential to impinge upon the privacy of a party, courts may issue protective orders which restrict permissible discovery if it would unduly annoy or burden the other party. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). Rule 26(c) of the Federal Rules of Civil Procedure states, in pertinent part, that

[u]pon motion by a party ... accompanied by a certification that the movant has in good faith conferred ... with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... (4) that certain matters not be inquired into, or that the scope of the disclosure of discovery be limited to certain matters."

Fed R. Civ. P. 26(c). Still, a court is given broad discretion regarding whether to issue a protective order. *Dove v. Atl. Capital Corp.,* 963 F.2d 15, 19 (2d Cir.1992) (grant and nature of protection is singularly within the district court's discretion).

■ That said, a court may issue a protective order only after the moving party demonstrates good cause. *In re Agent Orange Prod. Liab. Litig.,* 821 F.2d 139, 145 (2d Cir.1987). To establish good cause under Rule 26(c), courts require a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Havens v. Metro. Life Ins. Co. (In re Akron Beacon Journal),* No. 94 Civ. 1402, 1995 WL 234710, at *10, 1995 U.S. Dist. LEXIS 5183, at *10 (S.D.N.Y. April 20, 1995) (quoting *Cipollone v. Liggett Group, Inc.,* 785

F.2d 1108, 1121 (3d Cir.1986)). Furthermore, "good cause is not necessarily established solely by showing that discovery may involve inconvenience and expense." *Waltzer v. Conner, et al.,* No. 83 Civ. 8806, 1985 WL 2522, at *1, 1985 U.S. Dist. LEXIS 16049, at *2 (S.D.N.Y. Sept. 12, 1985). A burden or expense is not "undue" simply because it is burdensome or expensive. In deciding whether to issue the order, a court should compare the hardship to the party against whom discovery is sought with the probative value of the information to the other party. *Solarex Corp. v. Arco Solar, Inc.,* 121 F.R.D. 163, 169 (E.D.N.Y.1988), *aff'd* 870 F.2d 642 (Fed.Cir.1989).

As a threshold matter, Rule 37 of the Federal Rules of Civil Procedure states that where a party moves to compel discovery, its motion "must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." Fed. R.Civ.P. 37(a)(2)(A). The defendants satisfied this requirement as their motion included a Certificate of Conference which states that on August 4, 2003 they contacted the plaintiffs' counsel in a good faith attempt to resolve this matter. (Ds.' Mem. Supp. Mot., 8/5/03, at 23).

The defendants, then, bear the burden of showing good cause why a protective order should issue. They argue, first, that because the objected-to document requests "at best relate only to the 'subject matter' of the action, not the 'claims and defenses' of the parties," the court should issue a protective order. (Ds.' Mem. Supp. Mot., 8/3/03, at 10). Having already found that the document requests relate to the plaintiffs' claims, the court refuses to issue a protective order on this basis.

The defendants also contend that the plaintiffs' document requests seek "documents the production of which would place an enormous and unjustified burden on Defendants...." (*Id.*). They put forward that the plaintiffs' discovery requests "will cause Defendants to incur millions of dollars in costs searching for and reviewing documents

that have no bearing on this lawsuit." (Ds.' Reply Mem. Supp. Mot., 9/17/03, at 1). However, such stereotyped and conclusory statements do not establish good cause. As such, the court finds that the defendants did not meet their burden.

Nonetheless, even relying on these assertions, the court finds that, while such a course may be burdensome and expensive, it would not be *unduly* burdensome and expensive. As aforementioned, in making such a determination, courts should compare the hardship of the party seeking the order with the probative value of the information to the party seeking to compel discovery. In balancing these competing interests, "courts are admonished not only to consider the nature and magnitude of the competing hardships," but also to "give more weight to interests that have a distinctively social value than to purely private interests." *Id.* at 169 (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 726 F.2d 1150, 1159 (7th Cir.1984)(en banc)). As the Second Circuit remarked:

> Any finding that information is protected from discovery must reflect a balancing between on the one hand, the parties' right to discovery, which stems from society's interest in a full and fair adjudication of the issues involved in the litigation and, on the other hand, the existence of a societal interest in protecting the confidentiality of certain disclosures made within the context of certain relationships of acknowledged social value.

*Gray v. Bd. Of Higher Educ.,* 692 F.2d 901, (2d Cir.1982).[1]

Here, the plaintiffs have a right to discovery; "[t]he need for full disclosure of facts is necessary to our system of justice." *Conn. Fair Hous. Ctr., Inc. v. I.S.D.S. Hartford Props. Corp.,* No. 3:00 Civ. 1867, 2001 U.S. Dist. LEXIS 24008, at *7 (D.Conn.2001). The documents for which the plaintiffs ask are relevant to their claims as set forth in the complaint. Thus, society's interest in full and fair adjudication of the issues involved in litigation weighs heavily in their favor.

The defendants, on the other hand, claim that full production could cost millions of dollars. However, no overriding societal interest is implicated. The defendants do not claim a privilege based on the First Amendment. Cf. *Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). Nor do they assert any privacy concerns. Cf. *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545 (11th Cir.1985). Nor would disclosure of these documents affect the right of association. Cf. *Marrese,* 726 F.2d at 1159–60. The defendants assert purely private interests—that compliance with the document requests could be burdensome and expensive.

In balancing these competing interests, then, the court finds that the plaintiffs' interest in full disclosure outweighs the defendants' interest in conserving time and expense. As a result, they have failed to establish good cause. As such, the defendants are not entitled to a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. Therefore, their motion for a protective order, to the extent considered thus far, is denied.

However, the defendants also argue that a temporal limitation is appropriate. (Ds.' Reply Mem. Supp. Mot., 9/17/03, at 7). At present, the plaintiffs ask for responsive documents that were created from September 1, 1999 through the present date and beyond. As the defendants point out, practical concerns may exist in this regard. Furthermore, some of these documents may be privileged attorney-client communications, work-product, or of spurious value. The defendants suggest that April 18, 2000, the date of the complaint, serve as the cut-off date for responsive documents. For the time being, the court is prepared to grant a protective order, to that extent, without prejudice to the plaintiffs' seeking post-complaint discovery at a later date.

## C. The Non–Party Subpoenas

The defendants also argue that the court should enter a protective order that the

---

1. While the status of the holding of *Gray* may be uncertain vís-a-vís an assertion of privilege, courts still apply it in other types of discovery requests. *Compare Johnson v. Nyack Hosp.,* 169 F.R.D. 550, 561 n. 16 (S.D.N.Y.1996) *with In re Ashanti Goldfields Secs. Litig.,* 213 F.R.D. 102 (E.D.N.Y.2003).

plaintiffs' discovery pursuant to the non-party subpoenas not be had. In addition to the arguments set forth above, which the court rejects, the defendants maintain that, because the non-party requests are identical to those served on the defendants, they are needlessly duplicative. They contend that the plaintiffs "are seeking nine copies of the same documents from nine different parties." (Ds.' Mem. Supp. Mot., 8/5/03, at 21).

On balance, that the non-party subpoenas may be duplicative in some instances is not enough to establish good cause to enter a protective order. The need for full disclosure outweighs the burden placed on each non-party to produce responsive documents. While serving non-parties with identical document requests may result in duplication, such action would ensure discovery of all facts necessary to unearth the truth. This is especially appropriate in a case involving fraud and deceit. In the interests of full disclosure, then, the court declines to issue a protective order in favor of the non-parties, save to establish, without prejudice, an April 18, 2000 cut-off date.

\* \* \* \* \* \*

Except to the limited extent noted above, the defendants' motion is **DENIED.** This is not a "recommended ruling". It is a discovery ruling which is subject to review by a trial judge in accordance with the "clearly erroneous" or "contrary to law" statutory standards. Fed.R.Civ.P. 72(a). At the conclusion of all proceedings in this case, on application, the court will consider the amount of attorney's fees, if any, that should be awarded in connection with this motion. *See* Fed.R.Civ.P. 37.

**IT IS SO ORDERED.**